UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

JOHNNA L. AYRES,

                Plaintiff,

– against –

HELEN C. DODICK, of the New Jersey Office of the Public Guardian for Elderly Adults, ROBERT J. SHIVER LLC, and PRUDENT REVERE CAPITAL GROUP, INC.,

                Defendants.

**NOT FOR PUBLICATION**

**MEMORANDUM & ORDER**

21-cv-473 (ERK) (PK)

KORMAN, *J.*:

      Plaintiff Johnna L. Ayres asserts claims for breach of contract and for violations of New York Labor Law ("NYLL") against Defendants Helen C. Dodick, who was substituted for Robert J. Shiver in this action, Robert J. Shiver LLC ("RJS LLC"), and Prudent Revere Capital Group, Inc. ("PRCG") (jointly, "Defendants"). Ayres alleges that she worked as RJS LLC's and PRCG's Chief Operating Officer ("COO") and Corporate Secretary from February 2019 through September 2020 but never received the wages she was entitled to under her employment contract or state minimum wage laws. Ayres now moves for summary judgment on her claims for breach of contract and her claims for Defendants' alleged failure to pay her minimum wages and to comply with wage statement laws in violation of the NYLL.

1

# BACKGROUND

On June 5, 2019, Robert J. Shiver, acting in his capacity as Chairman of RJS LLC and an entity named "Prudent Revere Limited," offered Ayres, by letter dated June 5, 2019 (the "Offer Letter"), the position of COO of RJS LLC.  ECF No. 52-2 ¶¶ 1–2; Ex. A.[1]  Shiver's Offer Letter stated that the COO position would pay $350,000 annually, plus a bonus between 80% and 125% of her salary.  ECF No. 52-2 ¶¶ 4–5; Ex. A.  The Offer Letter stated that Ayres's salary was retroactive to February 1, 2019.  ECF No. 52-2 ¶ 4; Ex. A.

Ayres accepted Shiver's offer and worked as COO and Corporate Secretary for RJS LLC and PRCG from February 1, 2019, through September 15, 2020.  ECF No. 52-2 ¶ 9.  Although she worked approximately 2,300 hours for Defendants, she received only $19,230.75 in wages, all of which were paid between May and July of 2020.  *Id.* ¶¶ 7–8, 10.  Defendants also did not pay Ayres any bonus.  *Id.* ¶ 15.

Ayres initially brought Fair Labor Standards Act ("FLSA") and NYLL claims for "non-payment of wages" and to recover minimum wages, but her complaint was dismissed.  *See Ayres v. Shiver*, No. 21-cv-473, 2021 WL 3472655 (E.D.N.Y. Aug. 6, 2021).  The FLSA and NYLL, the decision explained, did not recognize claims for "non-payment of wages," and Ayres did not plead her minimum wage claims in

---

[1] The factual account presented here is drawn principally from Ayres's Rule 56.1 Statement of Material Facts.  *See* ECF No. 52-2.  The referenced exhibits are those appended to Ayres's moving and reply briefs.  *See* ECF Nos. 52-5; 52-10.

2

sufficient detail.  *See id.* at *1–3.  Ayres subsequently filed the operative amended complaint, providing more details of her alleged work for Defendants and pleading four claims: (1) failure to pay minimum wages under the FLSA (Count 1), *see* 29 U.S.C. §§ 206, 215, 216; (2) failure to pay minimum wages under the NYLL (Count 2), *see* N.Y. Lab. Law §§ 652, 663; (3) breach of contract under New York common law (Count 3); and (4) failure to provide Ayres with earning statements that complied with the NYLL (Count 4), *see* N.Y. Lab. Law §§ 195(3), 198(1-d).  Defendants again filed a motion to dismiss, which was granted as to Ayres's FLSA claim, but denied as to the breach of contract and NYLL claims.  *See Ayres v. Shiver*, No. 21-cv-473, 2022 WL 2161178 (E.D.N.Y. June 15, 2022).

Ayres then filed a motion for summary judgment on her remaining claims.  Before that motion could be decided, Defendants' counsel advised that a New Jersey state court had adjudged Shiver incapacitated and appointed him a temporary guardian in his state proceedings.  The pending summary judgment motion was administratively closed, subject to renewal after the substitution of a permanent guardian for Shiver in this action.  Subsequently, Helen C. Dodick, of the New Jersey Office of the Public Guardian for Elderly Adults, was substituted for Shiver.  *See* Fed. R. Civ. P. 25(b).  Ayres then renewed her summary judgment motion.

3

## LEGAL STANDARD

Summary judgment may be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In determining whether there is a genuine dispute as to a material fact, [the court must] resolve all ambiguities and draw all inferences in favor of the non-moving party." *Vincent v. The Money Store*, 736 F.3d 88, 96 (2d Cir. 2013). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## DISCUSSION

The factual record here is effectively undisputed, as Defendants have not presented any facts into the record that contradict the basic factual recitation set forth by Ayres in her Statement of Facts and the declarations and exhibits annexed to her motion.[2]

### I. Breach of Contract

Ayres argues that the Offer Letter constituted an employment agreement between her and RJS LLC, and that she was not compensated under the terms of the

---

[2] Defendants' Counterstatement of Facts does not raise any material factual disputes, but, through self-serving legal conclusions, merely disagrees with some of the facts set forth in Ayres's Statement of Facts. *See* ECF No. 52-7.

4

agreement. Under New York law,[3] "[t]he elements of a breach of contract claim are (1) the existence of a contract, (2) the plaintiff's performance, (3) the defendant's breach, and (4) resulting damages." *Alloy Advisory, LLC v. 503 W. 33rd St. Assocs., Inc.*, 195 A.D.3d 436, 436 (N.Y. App. Div., 1st Dep't 2021). "To form a binding contract there must be a 'meeting of the minds', such that there is 'a manifestation of mutual assent sufficiently definite to assure that the parties are truly in agreement with respect to all material terms.'" *Stonehill Cap. Mgmt., LLC v. Bank of the West*, 68 N.E.3d 683, 689 (N.Y. 2016) (citations omitted). To determine whether the parties intended to enter a contract and the nature of the contract's material terms, it is necessary to look to the "objective manifestations of the intent of the parties as gathered by their expressed words and deeds." *Id.*

### A. RJS LLC

Ayres is entitled to summary judgment on her breach of contract claim as to RJS LLC. The undisputed record demonstrates that Ayres was offered a position as COO of RJS LLC pursuant to the Offer Letter, that Ayres accepted the offer and began working, and that, except for the $19,230.75 she was paid between May and

---

[3] The Offer Letter does not contain a choice-of-law clause. *See* Ex. A. "Because the parties' briefs assume that New York law controls, I conclude that [Defendants'] implied consent is sufficient to establish choice of law." *Moss v. First Premier Bank*, No. 13-cv-05438, 2020 WL 5231320, at *3 (E.D.N.Y. Sept. 2, 2020) (internal quotation marks and alterations omitted).

July 2020, Ayres was not compensated for the approximately 2,300 hours of services she performed according to the terms of the Offer Letter.

Nothing in the record indicates that RJS LLC did not intend to be bound by the terms set forth in the Offer Letter. Nor does the record support Defendants' suggestion that RJS LLC did not intend to be bound by the terms of the Offer Letter until it was executed by both parties. *See Kowalchuk v. Stroup*, 61 A.D.3d 118, 124 (N.Y. App. Div., 1st Dep't 2009) ("Notably, there is no indication that at any time in the course of arriving at the terms of the agreement was it proposed that the parties not be bound until a written agreement was fully executed."). An unsigned contract may be enforceable if there is objective evidence establishing that the parties intended to be bound. *See Cotich v. Town of Newburgh*, 208 A.D.3d 849, 851 (N.Y. App. Div., 2d Dep't 2022). Here, both parties to the contract manifested the requisite offer and acceptance.

With respect to the element of performance, Defendants do not dispute that Ayres worked for RJS LLC for approximately 2,300 hours from February 1, 2019, through September 15, 2020. ECF Nos. 52-3 ¶ 11; 52-7 ¶ 10. And Defendants do not offer any facts into the record to suggest that RJS LLC did not receive the benefit of its bargain by virtue of Ayres's work.

Defendants' contention that "[t]he terms of the alleged contract at issue here are unclear and ambiguous" is without merit. ECF No. 52-6 at 6. The Offer Letter

represents an unequivocal valid and enforceable contract under which Ayres was to be compensated in exchange for her work as COO of RJS LLC.  The Offer Letter stated that Ayres's compensation would consist of: (1) "an annual salary of $350,000 paid bi-weekly and retroactive to February 1, 2019"; (2) "an annual bonus equivalent to [Ayres's] annual salary calculated within a range between 80% to 125% . . . [to] be paid out in July 2020"; (3) "a 10% equity stake in RJS LLC equally vested over 5 years contingent upon employment in good standing"; (4) "5% of Founders Ownership vested immediately";[4] and (5) "a full suite of benefits paid for by RJS LLC including health care, dental, vision, and 401k plan or equivalent."  Ex. A.  The record is clear that Ayres was not compensated according to these terms, and that the compensation Ayres ultimately received totaled only $19,230.75 paid across five checks dated May through July of 2020.  ECF No. 52-2 ¶¶ 7–8.  In fact, that RJS LLC began paying Ayres constitutes an acknowledgement by RJS LLC of the existence of the underlying agreement and Defendants' acceptance of the benefits of the parties' contract.

Defendants also argue that that the Offer Letter does not state any "conditions for payment of the bonus."  ECF No. 52-7 ¶ 5.  But the letter provides that the precise bonus amount would be determined in light of "company performance and achievement of personal business targets."  Ex. A.  And in any event, according to

---

[4] It is not evident from the record what "Founders Ownership" refers to.

7

the plain language of the offer letter, the guaranteed bonus would be at minimum 80% of Ayres's promised annual salary of $350,000 (i.e., $280,000). In light of these undisputed facts, RJS LLC breached the terms of the Offer Letter by failing to pay the promised annual salary, bonus, and other compensation and employment benefits to Ayres.

Therefore, the motion for summary judgment on the breach of contract claim as to RJS LLC is granted.

**B. PRCG and Dodick**

Because neither PRCG nor Dodick, who has been substituted as a party for Shiver, are parties to the employment contract between Ayres and RJS LLC that is manifested in the Offer Letter, whether either party can be held liable for RJS LLC's breach of contract turns on whether Ayres can pierce the corporate veil between RJS LLC and PRCG, or between RJS LLC and Shiver.[5]

Under New York law, a plaintiff may pierce the corporate veil and hold a non-party to a contract liable for breach of contract when the non-party is an alter ego of a signatory. *See Array BioPharma, Inc. v. AstraZeneca AB*, 184 A.D.3d 463, 464 (N.Y. App. Div., 1st Dep't 2020). "In order for a plaintiff to state a viable claim against a shareholder of a corporation in his or her individual capacity for actions

---

[5] The parties did not brief this issue, but it is necessary to address it as a threshold matter.

8

purportedly taken on behalf of the corporation, plaintiff must allege facts that, if proved, indicate that the shareholder exercised complete domination and control over the corporation and abused the privilege of doing business in the corporate form to perpetrate a wrong or injustice." *E. Hampton Union Free Sch. Dist. v. Sandpebble Builders, Inc.*, 944 N.E.2d 1135, 1136 (N.Y. 2011) (internal quotation marks and citation omitted).

"Factors to be considered in determining whether the owner has abused the privilege of doing business in the corporate form include whether there was a failure to adhere to corporate formalities, inadequate capitalization, commingling of assets, and use of corporate funds for personal use." *D'Mel & Assocs. v. Athco, Inc.*, 105 A.D.3d 451, 452 (N.Y. App. Div., 1st Dep't 2013). New York courts have noted that "[p]laintiffs who seek to pierce the corporate veil bear a heavy burden," and that "piercing the corporate veil is a fact-laden claim not well suited for summary judgment resolution." *Etage Real Estate LLC v. Stern*, 211 A.D.3d 632, 632–33 (N.Y. App. Div., 1st Dep't 2022).

The record before me does not contain facts sufficient for Ayres to pierce the corporate veil to hold PRCG or Dodick liable for RJS LLC's breach of the employment contract. The Offer Letter constituted an enforceable contract only between Ayres and RJS LLC. Although it is undisputed that Shiver is the sole owner and officer of both RJS LLC and PRCG, that Shiver signed the Offer Letter, and that

9

Ayres's compensation was paid by PRCG, *see* ECF No. 52-2 ¶¶ 3, 7–8, 20; Ex. A; Ex. B; Ex. F ¶ 5, these facts do not constitute sufficient evidence to support a reasonable finding of complete domination and control demonstrating that PRCG or Shiver have abused the corporate form to perpetrate an injury to Ayres.

Therefore, the motion for summary judgment on the breach of contract claim as to PRCG and Dodick is denied.

## II. Failure to Pay Minimum Wages Under the NYLL

Ayres also moves for summary judgment on her NYLL claims. Specifically, she argues that Defendants failed to pay her minimum wages as required by New York Labor Law § 652, and that Defendants violated New York Labor Law § 195(3) by failing to furnish her with statutorily compliant wage statements. Although Defendants merely argue in their opposition that summary judgment should be denied as to Ayres's NYLL claims and have not cross-moved for summary judgment on this cause of action, "[i]t is well-settled that a district court may grant summary judgment *sua sponte* where the record supports such a finding." *Loeffler v. Staten Island Univ. Hosp.*, No. 95 CV 4549, 2007 WL 9751915, at *2 (E.D.N.Y. Apr. 4, 2007) (citing cases); *accord Command Cinema Corp. v. VCA Labs, Inc.*, 464 F. Supp. 2d 191, 198 (S.D.N.Y. 2006) ("A district court may grant summary judgment sua sponte, as long as at least one party has moved for summary judgment.").

Ayres's motion for summary judgment on her NYLL claims is denied, and summary judgment is granted to Defendants on these claims for the reasons set forth below.

The NYLL expressly exempts from the definition of "employee" "any individual who is employed or permitted to work . . . in a bona fide executive, administrative, or professional capacity." N.Y. Lab. Law § 651(5)(b). The applicable regulations provide additional guidance, defining an employee in a "bona fide professional capacity" as one:

> (a) whose primary duty consists of the performance of work:
> (1) requiring knowledge of an advanced type in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction and study, as distinguished from a general academic education and from an apprenticeship, and from training in the performance of routine mental, manual or physical processes, or
> (2) original and creative in character in a recognized field of artistic endeavor (as opposed to work which can be produced by a person endowed with general manual or intellectual ability and training), and the result of which depends primarily on the invention, imagination or talent of the employee; and
> (b) whose work requires the consistent exercise of discretion and judgment in its performance; or
> (c) whose work is predominantly intellectual and varied in character (as opposed to routine mental, manual, mechanical or physical work), and is of such a character that the output produced or the result accomplished cannot be standardized in relation to a given period of time.

N.Y. Comp. Codes R. & Regs. tit. 12, § 146-3.2(c)(iii) (2024).

The record indicates that Ayres's role at RJS LLC and her typical responsibilities—which are undisputed—constituted sophisticated work that was

11

"predominantly intellectual and varied in character" and was "of such a character that the output produced or the result accomplished cannot be standardized in relation to a given period of time." *Id*. Indeed, in her own uncontradicted declaration, Ayres explained:

> As COO, my responsibilities varied. They included review of business opportunities for investment as well as identifying, drafting, and organizing business documents for review and where appropriate, execution. My duties also included reviewing various financial documentation provided by the prospective companies and other parties. I also conducted due diligence and modelled profitability for RJS [LLC] and potential partners. Additionally, I interfaced with clients, vendors, lenders, and attended meetings with prospective partners and investors. My responsibilities also included creating term sheets, budgets, and budget reconciliation.
> Furthermore, I created slide decks for RJS [LLC] when needed. I reviewed and met with entrepreneurs looking for funding, and I vetted their sales pitches prior to referring [them] to Shiver for follow up.

ECF No. 52-3 ("Ayres Decl.") ¶¶ 7–8.

In addition, Ayres states that her work for RJS LLC required her to take business trips to "Florida, Ohio, Kentucky, Indiana, and New York," Ayres Decl. ¶ 6, consistent with her Offer Letter, which stated that "[a]s COO, travel is expected with your position to meet business partners and clients helping RJS LLC assess business deals and new opportunities," Ex. A. Because of the advanced nature of Ayres's varied business responsibilities, I conclude as a matter of law that her

position as COO of RJS LLC was in a bona fide professional capacity, and therefore exempt from the minimum wage provisions of the NYLL.[6]

Because Ayres is not entitled to relief as an exempt professional under the NYLL, summary judgment is also granted to Defendants on Ayres's claim under New York Labor Law § 195(3) for Defendants' alleged failure to furnish required information on her wage statement. Ayres's request for attorneys' fees as to these claims is denied.

## CONCLUSION

Ayres's motion for summary judgment on her claim for breach of contract (Count 3) is granted as against RJS LLC, but denied as against PRCG and Dodick. Ayres's motion for summary judgment on her NYLL claims (Counts 2 and 4) is denied, and summary judgment is granted to Defendants on these claims.

**SO ORDERED.**

*Edward R. Korman*

Brooklyn, New York  Edward R. Korman
May 13, 2024  United States District Judge

---

[6] In any event, because Ayres has prevailed on her claim for breach of contract, and the Offer Letter states the precise salary that is owed to her under the terms of her employment, it would be a windfall for Ayres to recover additional damages based on non-payment of New York minimum wage.

13